

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-1596-12

### JAMES GARZA, Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS BEXAR COUNTY

**KELLER, P.J., filed a dissenting opinion.**

### DISSENTING OPINION

We should dismiss appellant's petition as improvidently granted because the record does not contain a judicial finding that appellant is a juvenile and the record does not otherwise conclusively show that to be the case. I also write to express my disagreement with the Court's holding that a rule of law can be established by our complete failure to address an issue in a prior case. And even if a rule of law could be established in such a manner, I do not agree that we would be constrained to follow it in a subsequent case.

## 1. Proof of Appellant's Age

In *Miller*, the Supreme Court held that the Eighth Amendment's Cruel and Unusual Punishments Clause prohibited the automatic imposition of a life without parole sentence on someone who was a juvenile at the time he committed the offense.[1] But whether, in this case, appellant was in fact a juvenile at the time he committed the offense is in doubt. In its opinion, the Court of Appeals remarked, "Garza gave conflicting statements to Colorado authorities about his age, stating at various times he was eighteen, nineteen, and finally seventeen years of age."[2] In a footnote, the court concluded, "The record does not conclusively establish Garza's age."[3] Appellant acknowledges this footnote in his brief, but he has made no attempt, in either his brief or his petition, to refute the conclusion therein that the record does not conclusively establish his age. The State devotes a page of its brief on discretionary review to whether applicant's age has been established. The State argues that "[t]here is conflicting evidence as to [appellant's] age at the time he committed the offense, and no fact-finder has been called on to decide the issue."

From the record references supplied by the State, it is apparent that appellant did give conflicting statements about his age, that he had no identification, that he gave a fake name, and that he did not give information about his parents when asked. A co-conspirator told officers that appellant was actually seventeen years old, and when confronted with that statement, appellant stated that he was seventeen. The record also shows that Colorado authorities treated appellant as a

---

[1] 132 S.Ct. 2455, 2460 (2012).

[2] *Garza v. State*, No. 04-11-00891-CR, slip op. at 2 (Tex. App.–San Antonio October 24, 2012) (not designated for publication).

[3] *Id.* at 2 n.1.

juvenile after that point. Nevertheless, the evidence is conflicting, I see no judicial finding in the record that appellant was actually under age eighteen at the time he committed the offense, and appellant has not directed us to any such finding.

Under these circumstances, the direct-appeal record is not sufficient to show that appellant is entitled to relief under *Miller*, which applies only to individuals who are under age eighteen. A remand in this case would be useless because the court of appeals has already determined that the record does not conclusively establish appellant's age. Moreover, there is no pressing jurisprudential need to review the court of appeals's unpublished opinion in this case. There is a forum in which appellant's claim and any associated issues can be resolved: habeas corpus. The court of appeals noted the State's accurate suggestion that "Garza's issue might be more appropriately raised in a writ of habeas corpus, which would allow Garza the opportunity to more fully develop the record with regard to his age."[4] Before granting relief, we should first determine in habeas proceedings whether appellant was in fact a juvenile when he committed this capital murder.[5]

## 2. Implied Holdings

In *Ex parte Maxwell*, we held that the Supreme Court's decision in *Miller* applied retroactively to cases on collateral review.[6] Neither the majority opinion nor the two dissents

---

[4] *Garza*, No. 04-11-00891-CR, slip op. at 4 n.3.

[5] *See Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006) (quoting *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (claim that was raised on direct appeal may be raised again on habeas when "direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding")).

[6] 424 S.W.3d 66, 68 (Tex. Crim. App. 2014).

addressed whether error had been forfeited by the failure to raise the claim at trial.[7] Nevertheless, the Court says that "[a] careful reading of *Maxwell* indicates that a majority of this Court has already passed on this issue—if only by necessary implication." I disagree.

It is true, as the Court says, that we *should* have addressed the issue of procedural default before remanding the case for further sentencing proceedings.[8] But we did not. Justice Jackson has famously said, "We are not final because we are infallible, but we are infallible only because we are final."[9] Instead of assuming that we must have intentionally, but silently, resolved the procedural default issue in the convicted person's favor because that is the only way our disposition in *Maxwell* could have been correct, we should admit that we made a mistake, overlooking an issue that we should have addressed. Courts make mistakes. That is one reason we have motions for rehearing.[10] On occasion, we have corrected our own mistakes on rehearing.[11] But it is certainly possible that

---

[7] *See id.*, *passim*.

[8] *See id.* at 76 (remanding for further sentencing proceedings "to permit the factfinder to assess applicant's sentence at (1) life with the possibility of parole (as both pre–2005 and post–2013 Texas law permits) or (2) life without parole after consideration of applicant's individual conduct, circumstances, and character"); *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012) (court of appeals's opinion was deficient for failing to address procedural-default issue regardless of whether the issue was raised by the parties).

[9] *See Ex parte Lewis*, 219 S.W.3d 335, 374 (Tex. Crim. App. 2007) (Cochran J., concurring) (quoting *Brown v. Allen*, 344 U.S. 443, 540 (1953) (Jackson, J., concurring)).

[10] *See Ex parte Ramey*, 382 S.W.3d 396, 398 n.7 (Tex. Crim. App. 2012) ("if applicant had believed that we failed to address an issue that he raised in his brief, he could have filed a motion for rehearing to point that out").

[11] *See Dixon v. State*, 2 S.W.3d 263, 270-72, 270 n.5, (Tex. Crim. App. 1999) (op. on State's motion for rehearing) (noting that, among other deficiencies, our opinion on original submission decided a different issue than the one that was presented to the court of appeals and on which we granted discretionary review); *Hughes v. State*, 878 S.W.3d 142, 151-52 (Tex. Crim. App. 1992) (op. on State's motion for rehearing) (overturning reversal of conviction on original submission that was

a mistake of ours will not be corrected by way of rehearing because the aggrieved party fails to raise

the issue in a motion for rehearing or because of an oversight on our part. We should not compound

such a mistake by proceeding under the legal fiction that our complete failure to address the issue

was actually a silent disposition.[12]

### 3. Binding Precedent

But even if one considered *Maxwell*'s failure to address the issue of procedural default to be

a silent holding, the question remains whether this Court should follow that holding in subsequent

cases or whether this Court should, in essence, overrule that holding at the earliest opportunity.[13]

One important factor to consider when deciding whether to overrule a prior decision is whether the

---

based on trial court's failure to grant a challenge for cause because the record showed that the defendant had received an extra peremptory strike). *See also Wilson v. State*, 311 S.W.3d 452 (Tex. Crim. App. 2010) (acknowledging that the defendant did not preserve the precise complaint that formed the basis of our decision on original submission but finding it of no consequence because he preserved a different complaint that compelled the same result).

[12] *See VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007) (quoting *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) ("To claim that an admonishment was in substantial compliance even though it was never given is a legal fiction.")).

[13] Justice Scalia has forcefully argued that it is desirable to overrule bad precedent at the earliest opportunity:

> [T]he respect accorded prior decisions increases, rather than decreases, with their antiquity, as the society adjusts itself to their existence, and the surrounding law becomes premised upon their validity. The freshness of error not only deprives it of the respect to which long-established practice is entitled, but also counsels that the opportunity of correction be seized at once, before state and federal laws and practices have been adjusted to embody it.

*South Carolina v. Gathers*, 490 U.S. 805, 824 (Scalia, J., dissenting). The case Justice Scalia wanted to overrule, *Booth v. Maryland*, 482 U.S. 496 (1987), was ultimately overruled by *Payne v. Tennessee*, 501 U.S. 808 (1991).

prior decision was flawed from the outset.[14] A decision can be flawed if it fails to consider factors that are relevant to the issue it resolves,[15] relies upon an illogical inferential leap from one proposition to another,[16] cites no authority for a proposition that is crucial to its holding,[17] relies on cases that do not support its holding,[18] or offers no reasoning in support of a proposition that is crucial to its holding.[19] *Maxwell* did not discuss the issue of procedural default at all, and consequently, it failed to offer any authority or reasoning in support of a procedural-default holding. It is hard to imagine how a decision could be more flawed than one that does not even purport to identify, much less address, the issue that was supposedly decided.

Of course, when a decision is flawed because of a failure to supply supporting authority or reasoning, the ultimate conclusion of that decision may nevertheless be correct.[20] But if that is so,

---

[14] *Grey v. State*, 298 S.W.3d 644, 646 (Tex. Crim. App. 2009); *Lewis*, 219 S.W.3d at 338.

[15] *Fienen v. State*, 390 S.W.3d 328, 334-35 (Tex. Crim. App. 2012).

[16] *Grey*, 298 S.W.3d at 649-50.

[17] *Lewis*, 219 S.W.3d at 358 ("With no authority whatsoever, the *Bauder* Court contended that 'the right to a trial before the jury first selected is the right to a *fair* trial before that jury.'").

[18] *Bawcom v. State*, 78 S.W.3d 360, 363 (Tex. Crim. App. 2002); *Malik v. State*, 953 S.W.3d 234, 236-37, 239 (Tex. Crim. App. 1997)..

[19] *Leday v. State*, 983 S.W.2d 713, 721-22 (Tex. Crim. App. 1998) (discussing *Palmer v. State*, 475 S.W.2d 797 (Tex. Crim. App. 1972)); *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997) (discussing *Parasco v. State*, 165 Tex. Crim. 547, 309 S.W.2d 465 (1958)).

[20] *See Mosley v. State*, 983 S.W.2d 249, 255-56 (Tex. Crim. App. 1998) (observing, in connection with defendant's point of error 60, that *Rousseau v. State*, 855 S.W.2d 666, 687-688 (Tex. Crim. App. 1993) failed to cite authority for its holding regarding whether a method of selecting the grand jury foreman violates the constitution but ultimately concluding that *Rousseau*'s holding was correct).

we should analyze the merits of the issue rather than simply relying upon the flawed decision.[21]

### 4. Right Not Recognized

Judge Cochran's concurring opinion advances the idea that the appellant's claim is immune from procedural default because it was not recognized as a valid claim at the time of trial. In support of this claim, the opinion relies upon, and intermingles, four distinct doctrines that are, in turn, separate from the Texas rule of procedural default. In doing so, the concurrence jumbles up the concepts of error preservation and retroactivity.

First, the concurrence relies upon the doctrine, articulated in *Griffith v. Kentucky*,[22] that new federal constitutional rules are retroactive to cases pending on direct appeal. Yes, the *Griffith* retroactivity-on-direct-appeal rule applies to all new federal constitutional rules,[23] but most federal constitutional violations may nevertheless be forfeited by a failure to raise the claim.[24] The Supreme Court has itself explained that the newness of a constitutional rule does not necessarily exempt it from procedural default.[25]

---

[21] *See id.* (analyzing the grand-jury issue that was previously decided adversely to the defendant in *Rousseau*). *See also id.*, 1998 Tex. Crim. App. LEXIS 86, \*\*51 n.22 (portion not designated for publication) (referring to "a reexamination of prior precedent urged by appellant in point of error 60").

[22] 479 U.S. 314 (1987).

[23] *Davis v. United States*, 131 S. Ct. 2419, 2430 (2011).

[24] *See Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013) (quoting *Yakus v. United States*, 321 U. S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.") (brackets and internal quotation marks omitted)).

[25] *Henderson*, 133 S. Ct. at 1126 (regarding the plain error doctrine: "Even where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object

Judge Cochran's concurrence next relies upon the doctrine articulated in *Teague v. Lane*[26] concerning when a new federal constitutional rule may be applied retroactively on collateral review. But the Supreme Court has said that a federal court should ordinarily address whether a claim has been procedurally defaulted under state law *before* addressing whether the claim is retroactive under *Teague*.[27] If a procedural default issue can be addressed before a *Teague* issue, it must be that relief can be denied on the basis of procedural default regardless of whether the new rule would be retroactive under *Teague*. The Supreme Court did articulate an exception to the principle of giving state-law-procedural-default issues priority, but that exception applied where the *Teague* issue was "easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law."[28]

Judge Cochran's opinion also relies upon the "plain error doctrine" that is followed by federal

---

unless an error not only affects substantial rights but also seriously affect[s the fairness, integrity or public reputation of judicial proceedings.") (brackets and internal quotation marks omitted); *Powell v. Nevada*, 511 U.S. 79, 84-85 (1994) ("It does not necessarily follow . . . that Powell must be set free, or gain other relief, for several questions remain open for decision on remand. In particular, the Nevada Supreme Court has not yet closely considered the appropriate remedy for a delay in determining probable cause . . . *or the consequences of Powell's failure to raise the federal question*, or the district attorney's argument that introduction at trial of what Powell said on November 7, 1989, was 'harmless' . . . . Expressing no opinion on these issues, we hold only that the Nevada Supreme Court erred in failing to recognize that *Griffith v. Kentucky* calls for retroactive application of *McLaughlin's* 48-hour rule.") (citations and internal quotation marks omitted, emphasis added); *Ford v. Georgia*, 498 U.S. 411 (1991) (addressing whether state-law procedural bar was an adequate and independent ground to bar review of a *Batson* claim that was retroactive under *Griffith* and holding that the state procedural rule was not adequate because it had not been firmly established and regularly followed at the time of the defendant's trial).

[26] 489 U.S. 288 (1989).

[27] *Lambrix v. Singletary*, 520 U.S. 518, 522-24 (1997).

[28] *Id.* at 525.

courts in deciding to review some errors on direct appeal in the federal system that were not raised at trial.  But Texas does not adhere to the plain error doctrine; we apply the three-category approach articulated in *Marin v. State*.[29]  And even under the federal plain-error doctrine, error does not become 'plain' solely on the basis that the rule had not been articulated at the time of trial.[30]

Finally, Judge Cochran's concurring opinion relies upon *Reed v. Ross*,[31] which articulated the "cause and prejudice" standard that allows federal courts to sometimes address errors on federal habeas that were procedurally defaulted in state court.  Texas has not adopted the cause-and-prejudice standard for state habeas, much less for direct appeal.  And even under federal law, the fact that an issue involves new law is not always sufficient to demonstrate "cause" under the cause-and-prejudice standard.[32]

In addition to relying upon doctrines not directly applicable to the case at hand to support this "right not recognized" approach, Judge Cochran's opinion contends that our jurisprudence in *Marin* recognizes "the same rule: The contemporaneous objection rule does not apply to fundamental constitutional rights—*Marin* category-one rights—that were not recognized at the time of trial." In support of this statement, the opinion cites *Sanchez v. State*.[33]  This contention is inaccurate for at

---

[29]  851 S.W.2d 275 (Tex. Crim. App. 1993).

[30]  *Henderson*, 133 S. Ct. at 1126.

[31]  468 U.S. 1 (1984).

[32]  *Smith v. Murray*, 477 U.S. 527, 436 (1986) ("Nor can petitioner rely on the novelty of his legal claim as 'cause' for noncompliance . . . . As petitioner has candidly conceded, various forms of the claim he now advances had been percolating in the lower courts for years at the time" he failed to raise his claim in state court.).

[33]  120 S.W.3d 359, 367 (Tex. Crim. App. 2003).

least two reasons. First, a *Marin* category-one right is not "the same rule" as the "right not recognized" rule. A *Marin* category-one right is exempt from the contemporaneous objection rule regardless of whether the right was recognized at the time of trial.[34] Second, the opinion is simply wrong to claim that *Sanchez* supports its position. In *Sanchez*, we expressly stated that the "'right not recognized' doctrine is inconsistent with our current law of error preservation,"[35] and we said that the doctrine related to a kind of fundamental error "that *Marin* generally eliminated from our jurisprudence."[36]

### 5. Disposition

I would dismiss the petition as improvidently granted because appellant's status as a juvenile at the time of the offense has not been established. We need not, and should not, address a complex issue of procedural default at this juncture. If this Court nevertheless feels compelled to address the procedural-default issue, it ought to conduct a serious analysis of the merits rather than rely upon our failure to address the issue in *Maxwell*.

I respectfully dissent.

Filed: June 11, 2014
Publish

---

[34] *See Marin*, 851 S.W.2d at 279 ("Rights which are waivable only, as well as absolute systemic requirements and prohibitions, cannot be made subject to rules of procedural default because, by definition, they are not forfeitable.").

[35] *Sanchez*, 120 S.W.3d at 365.

[36] *Id.* at 367.